**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DAVID ANDERSON, | ) CASE NO.  5:16-cv-01335 |
| | ) |
| Petitioner, | ) JUDGE BENITA Y. PEARSON |
| | ) |
| v. | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) |
| CHARMAINE BRACY, Warden, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Respondent. | ) |

Petitioner, David Anderson (hereinafter "Petitioner" or "Anderson"), challenges the constitutionality of his conviction in the case of *State v. Anderson*, Summit County Court of Common Pleas Case No. CR-2012-05-1469.  Petitioner, represented by counsel, filed his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on June 2, 2016. (R. 1).  On October 6, 2016, Warden Charmaine Bracy ("Respondent") filed a Motion to Dismiss. (R. 6).  Petitioner filed a traverse on December 9, 2016. (R. 9).  This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For reasons set forth in detail below, it is recommended that the Motion to Dismiss be GRANTED and the habeas petition be DISMISSED without prejudice.

**I. Summary of Facts**

Factual determinations made by state courts are presumed correct in a habeas corpus

proceeding instituted by a person in custody pursuant to the judgment of a state court. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court factual findings are presumed correct unless rebutted by clear and convincing evidence.") The Ninth District Court of Appeals (hereinafter "state appellate court") summarized the facts underlying Petitioner's conviction as follows:

> {¶ 10} In this case, Anderson does not challenge the jury's finding that the State proved all elements of both rape and kidnapping at trial. The evidence demonstrated that Anderson stopped the victim as she was walking outside, offered her a ride to church, drove her instead to another location, and forced her to engage in fellatio and cunnilingus. Based on our review of the evidence of Anderson's conduct, this Court concludes that he committed the offenses of kidnapping and rape separately.
>
> {¶ 11} The victim volunteered to cook lunch every Tuesday at her church as part of the church's community outreach program. To prepare the elaborate lunches, the cooks were required to arrive at the church around 8:00 a.m. When her friend failed to pick her up in the morning of May 15, 2012, the victim decided to make the 15-minute trek on foot. As she was walking, she noticed a car pass her and circle around several times to pass her again and again. As she approached a car wash, she noticed the same car parked in the business' parking lot. Anderson was alone in the car. He called the victim over to his car and asked her if she would like a ride. The victim told him that she was going to Macedonia Baptist Church and she accepted his offer of a ride to church.
>
> {¶ 12} Anderson began driving the victim in the direction of the church. As he reached the front of the church, he began to punch the victim repeatedly in the head and face. He then drove past the church, turned down a side street, and began driving away from the church. Until Anderson began punching her, the victim was unaware that he was not taking her to the church. Anderson threatened to shoot the victim, preventing her out of fear from rolling down her window to yell for help. After driving on several streets, Anderson quickly pulled into the driveway of an abandoned house which was located next door to another abandoned house. Anderson drove to the back of the house which was surrounded on three sides by heavy foliage, bushes, and trees. He then told her to get out of the car and get in the back seat or he would shoot her. She dared not attempt to run away out of fear of being shot and killed.
>
> {¶ 13} Anderson joined the victim in the back seat where he again punched her repeatedly and strangled her until she began to black out. Despite her pleas that he "stop it," Anderson forced the victim to perform fellatio until he ejaculated in her

> mouth. He then forced the victim to remove one shoe and one leg from her pants, and forced her to submit to cunnilingus. The victim was able to escape after the police arrived on the scene after a neighbor heard her screams and called 911.

*State v. Anderson*, 2014-Ohio-1206 ¶¶ 10-13, 2014 WL 1344584 (Ohio Ct. App. Mar. 26, 2014), *motion to certify allowed*, 2014-Ohio-2725, ¶¶ 10-13, 139 Ohio St. 3d 1427, 11 N.E.3d 283, *and rev'd*, 2015-Ohio-2089, ¶¶ 10-13, 143 Ohio St. 3d 173, 35 N.E.3d 512 (Ohio 2015).

## II. Procedural History

### A. Conviction

On May 31, 2012, a Summit County Grand Jury charged Anderson with one count of kidnapping in violation of O.R.C. § 2905.01(A)(4) and one count of rape in violation of O.R.C. § 2907.02(A)(2). (R. 6-1, PageID# 52-53, Exh. 1).

Anderson pleaded not guilty and the case proceed to trial, where a jury found Anderson guilty as charged. (R. 6-1, PageID# 54-56, Exhs. 2 & 3). On September 18, 2012, Anderson was sentenced to seven years in prison for kidnapping and ten years for rape, the sentences to be served consecutively for an aggregate term of seventeen (17) years. (R. 6-1, PageID# 57-58, Exh. 4). A mandatory term of five years of post-release control was imposed, Anderson was adjudged a Tier III sex offender, and the court ordered him to have no contact with the prosecuting witness. (*Id.*)

### B. Direct Appeal

Anderson filed a notice of appeal with the Ninth District Court of Appeals. (Exhibit 5). In his brief, filed January 7, 2013, Anderson raised the following assignments of error:

1. The trial court committed reversible and plain error by convicting and sentencing Anderson to multiple counts for rape and kidnapping as they were allied offenses of a similar import.

2. The trial court committed reversible and plain error by sentencing Anderson to consecutive sentences in violation of R.C. 2929.14(C).

3

    3.      Anderson was denied his constitutional right to effective assistance of counsel at trial when his trial counsel failed to argue that the trial court's imposition of consecutive sentences was contrary to law.

    4.      The trial court committed reversible and plain error when it failed to properly notify Anderson of his obligations to register as a sex offender at his sentencing hearing.

    5.      Anderson was denied his constitutional right to effective assistance of counsel at trial when his trial counsel failed to object at his sentencing hearing that the trial court failed to properly notify him of his obligations to register as a sex offender.

    6.      Trial court committed reversible and plain error in sentencing Anderson for kidnapping as a felony of the first degree, instead of a felony of the second degree, because the jury verdict did not include the degree of the offense, nor any aggravating elements as required under R.C. 2945.75(A)(2) and *State v. Pelfrey*, 112 Ohio St.3d 422, 860 N.E.2d 735, 2007-Ohio-256.

    7.      Anderson was denied his constitutional right to effective assistance of counsel at trial when his trial counsel failed to argue that the trial court should have sentenced Anderson on his kidnapping conviction as a felony of the second degree.

    8.      The trial court committed reversible and plain error when it ordered Anderson have "no contact" with the prosecuting witness.

    9.      Anderson was denied his constitutional right to effective assistance of counsel at trial when his trial counsel failed to argue that the trial court's order of having "no contact" with the prosecuting witness was unlawful.

(R. 6-1, PageID# 62-91, Exh. 6).

On March 26, 2014, the state appellate court affirmed the judgment of the lower court. (R. 6-1, PageID# 158-181, Exh. 11).

On March 27, 2014, Anderson, through counsel, filed a motion to certify conflict on a single issue: "If a defendant is sentenced to prison for a term of incarceration, does the trial court have the authority to issue against the defendant, a "no contact" order with the victim?" (R. 6-1, PageID# 182-219, Exh. 12). On April 23, 2014, the state appellate court agreed that a conflict of law

4

existed and granted the motion to certify. (R. 6-1, PageID# 220-221, Exh. 13). Anderson proceeded to file a Notice of Certified Conflict with the Supreme Court of Ohio. (R. 6-1, PageID# 222-249, Exh. 14).

On June 25, 2014, the Ohio Supreme Court determined that a conflict existed and ordered the parties to brief the following issue: "If a defendant is sentenced to prison for a term of incarceration, does the trial court have the authority to issue against the defendant, a 'no contact' order with the victim?" (R. 6-1, PageID# 250, Exh. 15).

On August 29, 2014, Anderson, through counsel, set forth the following proposition of law:

1. A trial court does not have the authority to issue against the defendant a "no contact" order with the victim when it sentences the offender to prison.

(R. 6-1, PageID# 251-347, Exh. 16).[1]

On June 3, 2015, the Supreme Court of Ohio reversed the judgment of the state appellate court and vacated the no-contact order imposed by the trial court. (R. 6-1, PageID# 429-440, Exhs. 20 & 21).

## C. Application to Reopen Appeal

On June 30, 2014, while his case was pending before the Ohio Supreme Court, Anderson, *pro se*, filed a motion for extension of time to file a "motion for reconsideration" pursuant to Ohio App. R. 26(B).[2] (R. 6-1,PageID# 441-443, Exh. 22). However, his filing suggests that he intended to file an application to reopen his appeal, which he allegedly mailed around the first

---

[1] The Office of the Ohio Public Defender submitted an *amicus curiae* brief, arguing that "[r]ecognizing the authority of trial courts to prohibit convicted persons sentenced to prison from contacting victims and victims' families would preclude the legitimate pursuit of relief, would prevent desirable outcomes, and would be detrimental to the overall administration of justice." (R. 6-1,, PageID# 350-383, Exh. 18).

[2] Motions for reconsideration are actually governed by Ohio App. R. 26(A), while applications to reopen an appeal based on a claim of ineffective assistance of appellate counsel are governed by Ohio App. R. 26(B).

5

week of May, 2014, but never received a file-stamped copy from the court. (*Id.*) According to Respondent, the state appellate court has not responded to this motion. (R. 6, PageID# 39).

**E. Federal Habeas Petition**

On June 2, 2016, Anderson, through counsel, filed a Petition for Writ of Habeas Corpus asserting the following grounds for relief:

> **GROUND ONE**: Petitioner's Rights Pursuant To The Double Jeopardy Clause Of The United States Constitution Were Violated When The Petitioner Received Separate Sentences For Both Rape And Kidnapping.
>
> **GROUND TWO**: Petitioner Received Ineffective Assistance Of Trial Counsel In Violation Of His Federal Constitutional Rights Pursuant To The 6th And 14th Amendments To The United States Constitution.
>
> **GROUND THREE**: Petitioner Received Ineffective Assistance Of Appellate Counsel In Violation Of His Federal Constitutional Rights Pursuant To The 6th And 14th Amendments To The United States Constitution.

(R. 1, PageID# 1-23).

### III. Exhaustion and Procedural Default

**A. Exhaustion Standard**

State prisoners must exhaust their state remedies before raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see also Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001) ("a petitioner cannot

6

circumvent the exhaustion requirement by failing to comply with state procedural rules.") (citations omitted).

> **B.** **Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id*. First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[3] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *See, e.g.*, *Engle v. Isaac*, 456 U.S. 107, 125-130 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. The Antiterrorism and Effective Death Penalty Act's exhaustion

---

[3] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138-39; *accord Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court, a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003), *abrogated on other grounds as recognized in English v. Berghuis*, 529 Fed. App'x 734, 744-45 (6th Cir. Jul. 10, 2013).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434

F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*. Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See, e.g., United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *Mason v. Mitchell*, 320 F.3d 604, 617 (6th Cir. 2003).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent, in order to prevent a "manifest injustice." *See Coleman*, 501 U.S. at 749-50. Conclusory statements are not enough. A petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *accord Jones v. Bradshaw,* 489 F.Supp.2d 786, 807 (N.D. Ohio 2007) (Katz, J.)

**C.     Analysis**

Respondent asserts that grounds one through three of the petition are unexhausted, and that the third ground is, in any event, not cognizable. (R. 6, PageID# 42-48). Moreover, Respondent avers that to the extent ground three, which alleges ineffective assistance of appellate counsel, is intended to argue that procedural default for grounds two and three should be excused, such an argument is misplaced. (R. 6, PageID# 42, 44-45). Respondent points out that she is arguing the claims are unexhausted, and *not* that they are defaulted. (*Id*.) In his traverse, Petitioner agrees that "the subject matter of ground three goes more toward establishing cause and prejudice than it does

9

establishing an actual ground for relief." (R. 9, PageID# 465).  As such, the Court does not construe ground three as raising a separate and distinct ground for relief, but rather as an argument that Petitioner's failure to exhaust should be excused.

> **1. Grounds One and Two: Double Jeopardy and Ineffective Assistance of Trial Counsel for Failing to Object to the Imposition of Consecutive Sentences**

In his first ground for relief, Petitioner asserts that the trial court's imposition of separate and consecutive sentences for rape and kidnapping violated the Double Jeopardy clause, because the crimes constituted one course of conduct. (R. 1, PageID# 18).  In his second ground for relief, Petitioner raises a related argument, asserting that trial counsel should have objected to the imposition of consecutive sentences and rendered ineffective assistance by failing to do so. (R. 1, PageID# 20).

Respondent asserts that grounds one and two were never fairly presented to the state courts, because the arguments were not raised before the Supreme Court of Ohio. (R. 6, PageID# 43-44). Respondent is correct.  A review of Petitioner's state court filings reveals that while similar arguments were raised before the state appellate court, they were not raised before the Ohio Supreme Court.  In fact, Petitioner concedes that the substance of grounds one and two were not raised to the Supreme Court of Ohio. (R. 9, PageID# 464).  Therefore, grounds one and two are indeed unexhausted.

The express language of the AEDPA states that a petition for habeas corpus "shall not be granted unless … the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b).  In addition, § 2254(c) states that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, *by any available procedure*, the question

presented." (emphasis added); *see also Rhines v. Weber*, 544 U.S. 269, 274, 125 S. Ct. 1528, 1533, 161 L. Ed. 2d 440 (2005) ("AEDPA preserved [the] total exhaustion requirement.") "Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts." *Newton*, 349 F.3d at 877. Fair presentation is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning*, 912 F.2d at 881.

The petition is comprised exclusively of unexhausted claims. The court, consequently, is barred from addressing them. *See, e.g., Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) (a habeas petition containing only unexhausted claims is "ordinarily dismissed without prejudice, in order to permit the petitioner the opportunity to pursue them in state court."); *Taylor v. Kelly*, No. 1:13 CV 02577, 2014 WL 4436595, at *9 (N.D. Ohio Sept. 9, 2014) ("When a federal habeas corpus petition contains solely unexhausted grounds for relief, as is the case here, the court should dismiss the federal habeas corpus petition without prejudice.") (collecting cases). Therefore, the court recommends dismissing the petition without prejudice.

**a. Exceptions to Exhaustion Requirement**

There are a number of exceptions to the rule that unexhausted claims should be dismissed, but they are not applicable here. First, exhaustion should be waived where returning to state court would be futile. *See, e.g., Turner v. Bagley*, 401 F.3d 718, 726 (6th Cir. 2005) ("A habeas petitioner … is not required to take further futile steps in state court in order to be heard in federal court") (internal quotation marks omitted); *accord Rhodes v. LaRosa*, No. 1:13-CV-00385, 2013 WL 3337626 at *6 (N.D. Ohio Jul. 2, 2013). Respondent contends that Anderson may still file a motion for delayed appeal pursuant to Ohio S. Ct. Prac. R. 7.01(A)(4), and therefore, dismissal would not be futile. The plain language of the Rule does not require that a motion for delayed

11

appeal be filed within any specified time frame, but instead requires the movant to set forth the "reasons for delay" along with an affidavit setting forth the supporting facts. Thus, such a motion cannot be deemed "futile" due simply to the amount of time elapsed. While the Ohio Supreme Court clearly has discretion to decide whether a movant has set forth sufficient reasons for the delayed appeal, the uncertainty of whether such a motion would be granted is not a sufficient reason to waive the exhaustion requirement.[4] The Sixth Circuit has noted that in the state habeas context, "[a]ny uncertainty whether the courts of Ohio will consider petitioner's habeas claim on the merits is not substantial enough to render resort to state process futile." *Brewer v. Dahlberg*, 942 F.2d 328, 340 (6th Cir. 1991) (finding that the uncertainty also did not "obviate the need to give the courts of Ohio a fair opportunity to pass upon and correct any constitutional deficiency.") (internal citations omitted); *accord Rodgers v. Capots*, 12 F.3d 214 (6th Cir. 1993) ("the fact that the state's remedial processes are open to interpretation does not render the state processes futile."); *Seaton v. Kentucky*, 92 Fed. App'x 174, 175 (6th Cir. 2004) (finding that if a state remedy may be available, "exhaustion is not deemed to be complete"); *Hansen v. Morgan*, No. 3:15 CV 44, 2015 WL 9488301 at *4 (N.D. Ohio Dec. 7, 2015), *report and recommendation adopted*, 2015 WL 9480695 (N.D. Ohio Dec. 29, 2015) (finding that a Petitioner's failure to present his grounds for relief to the state courts through available state avenues prevents review by a federal habeas court).

A court may also dispense with the exhaustion requirement if "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C § 2254(b)(1)(B)(i) & (ii). Given the

---

[4] This Court offers no opinions as to whether Petitioner has sufficient reasons for delay, nor does it opine as to the likelihood such a motion would be granted.

12

above-mentioned availability of a motion for delayed appeal, it cannot be argued that there is a lack of a corrective process. Furthermore, Petitioner has not argued that the process is ineffective other than to postulate that he has little chance of being granted a delayed appeal.[5] (R. 9, PageID# 471).

### b. Ineffective Assistance of Counsel

Finally, Petitioner asserts that his failure to exhaust should be excused due to the ineffective assistance of his appellate counsel, the same counsel who represented him before both the state appellate court and the Ohio Supreme Court.

Before a claim of ineffective assistance of counsel may be used to excuse a lack of exhaustion or a procedural default, "the exhaustion doctrine requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Kostenbauder v. Cook*, No. 3:12CV2581, 2014 WL 992022 at *7 (N.D. Ohio Mar. 13, 2014) (*citing Jacobs v. Mohr*, 265 F.3d 407, 414 (6th Cir. 2001); *Edwards v. Carpenter*, 529 U.S. 446, 452, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000); *Ewing v. McMackin*, 799 F.2d 1143, 1149-50 (6th Cir. 1986)). Here, Petitioner never presented the state courts with an ineffective assistance of counsel claim. Therefore, such a claim cannot be used to excuse Petitioner's failure to exhaust.

Assuming *arguendo* that a Petitioner can use an unexhausted ineffective assistance of counsel claim to excuse a failure to exhaust, Petitioner has not demonstrated that his appellate counsel was ineffective. First, he has failed to demonstrate that he was entitled to counsel during

---

5 Typically, courts have found a state process ineffective where there has been "[i]nordinate delay in adjudicating state courts claims," and such delay is attributable to the State. *See, e.g., Workman v. Tate,* 957 F.2d 1339, 1344 (6th Cir. 1992) Such circumstances do not exist here, because Petitioner never pursued a discretionary appeal with respect to the claims raised in the Petition.

13

a discretionary appeal. However, the traverse argues that appellate counsel never explained to Petitioner that the certified-conflict appeal was not going to address the arguments raised in grounds one and two and did not advise Petitioner that he needed to file a discretionary appeal. (R. 9, PageID# 464, 471). Petitioner's contention, however, is unsupported. There is simply no evidence that appellate counsel failed to inform Petitioner that it was the Petitioner's responsibility to pursue his own discretionary appeal. Moreover, a fairly analogous argument has recently been rejected by the Sixth Circuit Court of Appeals:

> Hale also claims that his appellate counsel was unconstitutionally ineffective for failing to advise him on the merits of seeking leave to appeal his prosecutorial misconduct claim to the Michigan Supreme Court on direct review. "There can be a constitutional claim of ineffective assistance of counsel only at a stage of the proceedings when there is a right to counsel under the Sixth Amendment." *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 433 (6th Cir. 2006) (*citing Coleman v. Thompson*, 501 U.S. 722, 752, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)). Hale had no constitutional right to have his appellate counsel advise him on the merits of seeking leave to appeal to the Michigan Supreme Court. *See Torna*, 455 U.S. at 587-88. There is no principled difference between having counsel represent a defendant during a second, discretionary appeal and having counsel advise a defendant on whether or not to seek a second, discretionary appeal, and a criminal defendant does not have a constitutional right to counsel to pursue second, discretionary state appeals. *Ross*, 417 U.S. at 612. None of the cases that Hale cites indicate that he had a freestanding constitutional right to have his appellate counsel advise him of "the pros and cons of" filing a second, discretionary appeal. *See Gunner v. Welch*, 749 F.3d 511, 519 (6th Cir. 2014); *Johnson v. United States*, 364 F. App'x 972, 975 (6th Cir. 2010); *Smith*, 463 F.3d at 433.
>
> Because Hale did not have a constitutional right to have his appellate counsel advise him on the pros and cons of seeking leave to appeal to the Michigan Supreme Court, we reject this ineffective assistance of appellate counsel claim.

*Hale v. Burt*, 645 Fed. App'x 409, 417-418 (6th Cir. 2016).

Given the *Hale* decision, appellate counsel's alleged failure to inform Petitioner that he should file a discretionary appeal, in order to preserve his assignments of error, fails to constitute ineffective assistance and, correspondingly, fails to establish cause sufficient to excuse

Petitioner's lack of exhaustion. Petitioner attempts to side-step this issue by first suggesting that Petitioner's appeal before the Ohio Supreme Court on the certified-conflict issue was not a discretionary appeal. (R. 9, PageID# 466). However, the Traverse does not assert that his counsel before the Ohio Supreme Court was deficient in handling the certified-conflict appeal. Indeed, given that Petitioner actually prevailed on the certified-conflict appeal, such an argument would be untenable.

Instead, Petitioner contends that counsel should have filed a Notice of Appeal and a corresponding supporting memorandum to preserve the other issues that were raised before the state appellate court. In other words, counsel should have also filed a discretionary appeal. However, such an argument merely repeats the argument rejected by *Hale*. None of the authority cited by Petitioner suggests that counsel, who handles a certified-conflict appeal, is duty bound to raise other unrelated arguments. In fact, it is clear that Ohio's rules governing appeals before the Supreme Court of Ohio *prohibit* briefing any issues other than the issue(s) identified in the order of the Supreme Court finding a conflict:

> (B) **Scope**
>
> The parties shall brief only the issues identified in the order of the Supreme Court as issues to be considered, and those issues shall be clearly identified in the table of contents, in accordance with S.Ct.Prac.R. 16.02(B)(1).
>
> (C) **When a certified-conflict case is consolidated with a jurisdictional appeal**
>
> In cases where a certified-conflict case has been consolidated with an appeal under S.Ct.Prac.R. 7.07(C), the brief shall identify the issues that have been found by the Supreme Court to be in conflict and shall distinguish those issues from any other issues being briefed in the consolidated appeal.

Ohio S. Ct. Prac. R. 8.03.

The Ohio Supreme Court, in its order determining that a conflict existed, ordered the parties

15

to brief only one issue: "If a defendant is sentenced to prison for a term of incarceration, does the trial court have the authority to issue against the defendant, a 'no contact' order with the victim?" (R. 6-1, PageID# 250, Exh. 15). As such, counsel could not have been ineffective for failing to raise issues in a manner prohibited by the Supreme Court's rules.

Petitioner's contention that his certified-conflict appeal transformed any unrelated assignments of error issues into a quasi-appeal of right is misplaced. (R. 9, PageID# 466). The Ohio Supreme Court Practice Rules clearly differentiate between: (1) appeals of right (S. Ct. Prac. R. 5.01); (2) jurisdictional appeals, which are essentially discretionary appeals (S. Ct. Prac. R. 5.02); and (3) certified-conflict appeals (S. Ct. Prac. R. 5.03). The Rules also clearly contemplate that jurisdictional/discretionary appeals and certified-conflict appeals are to be instigated separately, but *may* be consolidated later by the Court if deemed appropriate:

**S.Ct.Prac.R. 7.07 Effect of pending motion
to certify a conflict upon a
jurisdictional appeal**

(A) **General**

(1) If a party has perfected a jurisdictional appeal with the Supreme Court in accordance with S.Ct.Prac.R. 7.01(A), but also has timely moved the court of appeals to certify a conflict in the case, that party shall file a notice with the Supreme Court that a motion to certify a conflict is pending in the court of appeals.

(2) The Supreme Court will stay consideration of the jurisdictional memoranda filed in the jurisdictional appeal until the court of appeals has determined whether to certify a conflict in the case.

(B) **Determination of no conflict by the court of appeals**

(1) If the court of appeals determines that a conflict does not exist, the party that moved the court of appeals to certify a conflict shall immediately file a notice of that determination with the Supreme Court.

(2) In accordance with S.Ct.Prac.R. 7.08, the Supreme Court will consider the jurisdictional memoranda filed in the jurisdictional appeal.

>  (C) **Determination of conflict by the court of appeals**
>
>  (1) If both a certified conflict and jurisdictional appeal are perfected, the Supreme Court will review the court of appeals order certifying a conflict when it reviews the jurisdictional memoranda filed by the parties.
>
>  (2) In accordance with S.Ct.Prac.R. 7.08 and 8.02, the Supreme Court will issue an order determining both whether a conflict exists and whether to accept the jurisdictional appeal, and consolidating the cases if necessary.

Ohio S. Ct. Prac. R. 7.07.

Because Petitioner was not entitled to counsel during a discretionary/jurisdictional appeal to the Ohio Supreme Court, Petitioner cannot claim his counsel handling his certified-conflict appeal to the Ohio Supreme Court was ineffective for failing to pursue or failing to advise Petitioner to pursue a separate discretionary appeal. Therefore, Petitioner's failure to exhaust the arguments raised in his habeas petition before the state courts cannot be excused due to the ineffectiveness of counsel.

### IV. Conclusion

For the foregoing reasons, it is recommended that Respondent's Motion to Dismiss (R. 6) be GRANTED and Anderson's Petition be DISMISSED without prejudice as unexhausted.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: February 22, 2017

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985)**, *reh'g denied*, **474 U.S. 1111 (1986).**